UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 2:24-cr-00067-JAW-1 |
| | ) | |
| KENNETH ADAMS | ) | |

## ORDER

Because there was a categorical match between the applicable state and federal laws in effect on the date a defendant committed the conduct giving rise to a predicate state conviction for aggravated drug trafficking of cocaine, the court concludes the state offense counts as a serious drug felony triggering the application of enhanced penalties pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 851. However, the government may not seek enhanced penalties based on a separate state charge for aggravated drug trafficking of oxycodone not included in the § 851 information.

## I.    BACKGROUND

On June 5, 2024, a federal grand jury indicted Kenneth Adams for a single count of distribution and possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). *Indictment* at 1 (ECF No. 13). The indictment alleged Mr. Adams is subject to the enhanced mandatory minimum penalty provisions as set forth in 21 U.S.C. §§ 841(b)(1)(B) and 851 based on a prior conviction for a serious drug felony within the meaning of 18 U.S.C. § 924(e)(2)(A). *Id.* at 1-2.

On December 3, 2024, the Government filed an information in accordance with 21 U.S.C. § 851 (the § 851 information) seeking to establish that, at the time of the commission of the federal drug offense charged in the indictment, Mr. Adams had

previously been convicted of committing a serious drug felony, specifically Unlawful Trafficking in Scheduled Drugs, here cocaine, in violation of 17-A M.R.S. § 1105-A(1)(D), in the state of Maine Superior Court for Aroostook County at Houlton, in *State v. Kenneth Adams*, Docket Number: HOUSC-CR-2015-00066, judgment having been entered on January 4, 2016, for which Mr. Adams served in excess of twelve months incarceration and was released within fifteen years of the commencement of the offense charged in the federal indictment. *Info. Charging Prior Conviction (21 U.S.C. § 851)* at 1 (ECF No. 40) *(§ 851 Info.).* The § 851 information notified Mr. Adams that the Government intended to rely upon this prior conviction in seeking the imposition of the enhanced penalties under 21 U.S.C. §§ 841(b)(1)(B) and 851. *Id.*

On December 20, 2024, Mr. Adams pleaded guilty to the charge contained in the indictment. *Min. Entry* (ECF No. 47). The United States Probation Office (PO) subsequently commenced preparation of the Presentence Investigation Report (PSR); upon the PO's publication of the PSR, *Presentence Investigation Rep.* (ECF No. 48), Mr. Adams raised numerous objections. *Def. Adam[s]'s Objs. and Resps. to Presentence Investigation Rep.* (ECF No. 49) (*Def.'s Objs.*). As relevant to this order, the Defendant objected to the proposed application of an enhanced penalty under 21 U.S.C. §§ 841(b)(1)(B) and 851 on the ground that "during the period relevant to the defendant's prior conviction[,] Maine had a definition of cocaine that was broader than the applicable federal definition, because it included isomers not included in the federal definition." *Id.* at 7. Citing caselaw from the United States Courts of Appeal for the Seventh and Eighth Circuits, Mr. Adams argued that his prior conviction

2

under state law is not a categorical match with the federal crime and, thus, is not a qualifying predicate warranting enhanced penalties. *Id.* at 7-8.

At a presentence conference on March 20, 2025, counsel agreed that Mr. Adams's objection to the enhancement presents a legal, not a factual, dispute, and the Court accordingly ordered the parties to jointly file a stipulated record and their respective memoranda on whether the mandatory minimum applies to Mr. Adams. *Min. Entry* (ECF No. 55). The Court informed the parties that, after it reviewed their filings and issued an order, it would reconference the case ahead of sentencing. *Id.* In compliance with the Court's directive, the parties filed a joint stipulation on April 4, 2025, *Stipulation* (ECF No. 59), the Government filed its memorandum on April 18, 2025, *Gov't's Submission in Support of the Appl. of Enhanced Penalties* (ECF No. 60) (*Gov't's Mem.*), and Mr. Adams responded on April 28, 2025. *Def.'s Mem. Regarding the Appl. of Enhanced Penalties* (ECF No. 62) (*Def.'s Mem.*). On May 7, 2025, after observing that the parties had filed an incomplete stipulated record, the Court issued an order requiring the parties to provide the relevant state law in place on the date of Mr. Adams's commission of the state offense. *Order to Respond* (ECF No. 64). Mr. Adams complied on May 9, 2025. *Def.'s Mem. Regarding 17-A M.R.S. § 1102(1)(F) as of May 8, 2015* (ECF No. 65) (*Def.'s Suppl. Stipulation*). But the Government failed to respond. On May 15, 2025, the Court ordered the Government to state its position regarding the correct version of 17-A M.R.S. § 1102(1)(F) effective May 8, 2015. *Order to Gov't to Respond* (ECF No. 66). On May 22, 2025, the Government filed its response, joining in Attorney MacColl's May 9, 2025

memorandum. *Gov't's Mem. Regarding 17-A M.R.S. § 1102(1)(F) as of May 8, 2015* at 1 (ECF No. 67) (*Gov't's Suppl. Stipulation*).

## II.    THE STIPULATED FACTUAL RECORD

### A.    Kenneth Adams's Prior Conviction

In 2015, Mr. Adams was charged in Aroostook County Superior Court with three counts of aggravated trafficking in scheduled drugs in *State v. Kenneth Adams*, Docket No. CR-15-066. *Stipulation* at 1. As relevant here, Count One charged that "[o]n or about May 8, 2015, Mr. Adams did intentionally or knowingly traffic[] in what he knew or believed to be a scheduled drug, which was in fact cocaine, a schedule W drug. . ..," a violation of 17-A M.R.S. § 1105-A(1)(D). *Id.*; *id.*, Attach. 1, *Indictment* (*State Indictment*). Count Three charged that "[o]n or about May 8, 2015, Mr. Adams did intentionally or knowingly traffic[] in what he knew or believed to be a scheduled drug, which was in fact oxycodone, a schedule W drug. . ..," a violation of 17-A M.R.S. § 1105-A(1)(B)(1). *Stipulation* at 1; *State Indictment*. The Defendant pleaded guilty to the charges in Counts One and Three and judgment was entered on January 4, 2016. *Stipulation* at 1; *id.*, Attach. 2, *J. and Commitment* at 1 (*State J.*). Count Two was dismissed at sentencing. *State J.* at 1. The § 851 information filed by the

Government in this case alleges that Mr. Adams was convicted on Count One of *State v. Kenneth Adams*, Docket No. CR-15-066. *Stipulation* at 2.

### B.    The Categorical Approach

### 1.    Maine State Law

The parties agree that the relevant Maine statute, effective on May 8, 2015 and January 4, 2016, defined "cocaine" as:

(1)    Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine and derivates of ecgonine and their salts have been removed; and

(2)    A mixture or preparation that contains any quantity of any of the following substances:

    (A)    Cocaine, its salts, optical and geometric isomers and salts of isomers;

    (B)    Ecgonine, its derivates, their salts, isomers and salts of isomers; or

    (C)    Cocaine base, which is the alkaloid form of cocaine[.]

*Id.* at 2-3 (quoting 17-A M.R.S. § 1102(1)(F) (effective Jul. 12, 2015 to Jul. 28, 2016)); *Def.'s Suppl. Stipulation* at 1 (quoting 17-A M.R.S. § 1102(1)(F) (effective May 8, 2015)); *accord Gov't's Suppl. Stipulation* at 1.[1]

---

[1]    As the Court noted in its May 7, 2025 order to respond, the parties' joint stipulation provided the relevant state law in effect from July 12, 2015 until July 28, 2016, thus informing the Court of the law in effect on January 4, 2016, the date of Mr. Adams's conviction but did not provide the relevant state law in effect on May 8, 2015, the date on which Mr. Adams committed the underlying state offense. Mr. Adams's supplement to the stipulation confirms that the same version of 17-A M.R.S. § 1102(1)(F) was in effect on May 8, 2015 and January 4, 2016, explaining "defendant Adams notes that although other subsections of section 1102 were amended in 2015 (but after May 8), section 1102(1)(F) was unchanged from about 1995 until it was amended by 2017 Public Law, Chapter 432." *Def.'s Suppl. Stipulation* at 1. On May 22, 2025, the Government joined the Defendant's supplemental memorandum. *Gov't's Suppl. Stipulation* at 1 ("The government hereby joins in Defendant's filing").

## 2.    Federal Law

The parties agree 21 U.S.C. § 802 provided the relevant federal definitions:

(17)    The term "narcotic drug" means any of the following whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

. . ..

(C)    Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed.

(D)    Cocaine, its salts, optical and geometric isomers, and salts of isomers.

(E)    Ecgonine, its derivatives, their salts, isomers, and salts of isomers.

(F)    Any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subparagraphs (A) through (E).

*Id.* at 3 (quoting 21 U.S.C. § 802(17)(C)-(F) (effective Dec. 18, 2014 to Jul. 21, 2016)).

Further, 21 U.S.C. § 812 listed as Schedule II controlled substances "coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivates of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph." *Id.* at 3-4 (quoting 21 U.S.C. § 812) (effective Jul. 9, 2012 to Dec. 19, 2018)).

Although the state and federal definitions were similar or coterminous on May 8, 2015, on September 11, 2015, the U.S. Drug Enforcement Agency (DEA) and U.S. Department of Justice (DOJ) by rule removed [123I]ioflupane from Schedule II of the

6

Controlled Substances Act.  *Id.* at 4 (citing 80 Fed. Reg. 54715).[2]  As the United States Supreme Court explained in *Brown v. United States*, 602 U.S. 101 (2024), "[123I]ioflupane . . . is the active pharmaceutical ingredient in a drug used to diagnose patients who are suspected to have Parkinson's disease."  *Id.* at 108.  Prior to that agency action, [123I]ioflupane "was, by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances."  *Id.* (citing 80 Fed. Red. 54715).  The agency rulemaking "remove[d] the regulatory controls and administrative, civil, and criminal sanctions applicable to controlled substances, including those specific to schedule II controlled substances, on persons who handle (manufacture, distribute, reverse distribute, dispense, conduct research, import, export, or conduct chemical analysis) or propose to handle [123I]ioflupane]."  *Id.* (citing 80 Fed. Red. 54715).

---

[2]    The stipulation, government's memorandum, and defendant's memorandum all incorrectly refer to "[123 I]Iboflupane."  *Stipulation* at 3-4; *Gov't's Mem.* at 1; *Def.'s Mem.* at 4.  Without the bracket, the correct spelling of the isomer is Ioflupane without a "b."  *See* 80 Fed. Reg. 54715.

The Court found a United States Supreme Court case that refers to Ioflupane but none in the First Circuit.  The references are in *Brown v. United States*, 602 U.S. 101 (2024).  In that case, Justice Alito spells the isomer [123I]ioflupane with a small case second i, *see id.* at 108, 110, 114, and [123I]Ioflupane with an upper case second I.  *See id.* at 110.  In dissent, Justice Jackson uses a lower case second i.  *Id.* at 134 (Jackson, J., diss.).  The Court has been unable to find an authoritative source for the correct spelling and has opted to use [123I]ioflupane.  *See also Johnson v. United States*, No. 1:24-cv-831, 2025 U.S. Dist. LEXIS 41220, at *26 (W.D. Mich. Mar. 7, 2025); *but see United States v. Hales*, 23-cr-20645, 2024 U.S. Dist. LEXIS 229835, at *1 n.1 (E.D. Mich. Dec. 19, 2024) (referring to "[123 I]ioflupane"); *United States v. Richardson*, No. 22-14127, 2024 U.S. App. LEXIS 19731, at *4-5 (11th Cir. Aug. 7, 2024) (referring only to "ioflupane"); *United States v. Puryear*, No. 22-14135, 2024 U.S. App. LEXIS 18059, at *3-4 (11th Cir. July 23, 2024) (same); *United States v. Gardner*, No. 21-14082, 2024 U.S. App. LEXIS 16406, at *4 (11th Cir. July 5, 2024) (same).

III.    **THE PARTIES' POSITIONS**

A.    **The Government's Memorandum Regarding the Application of Enhanced Penalties**

The Government argues Mr. Adams's "prior conviction for aggravated drug trafficking of both cocaine and oxycodone supports enhanced penalties." *Gov't's Mem.* at 1.

1.    **Count One**

First, the Government reports that, per the parties' stipulation, Mr. Adams was previously convicted of aggravated drug trafficking of cocaine on January 4, 2016, for criminal conduct which took place on or about May 8, 2015. *Id.* (citing *Stipulation*; *State Indictment*).  As of May 8, 2015, the Government says, [123I]ioflupane had not yet been removed from the federal definition of cocaine, explaining "[t]hat isotope was only decriminalized in September 2015, five months after the offense conduct." *Id.* (citing 80 Fed. R. 54715).

"While the federal and Maine definitions of cocaine were arguably distinct at the time of his conviction in 2016," the Government argues, "at the time that the defendant *committed the offense*, the two definitions of cocaine were the same" and, thus, "Count One of the predicate conviction describes an offense that is a categorical match to a 'serious drug offense' as defined in federal law." *Id.* at 1-2 (citing *Brown*, 602 U.S. at 106 ("A state drug offense counts as an [Armed Career Criminal Act (ACCA)] predicate only if the State's definition of the drug in question matches the definition under federal law") (Government's emphasis) (citation corrected)).

The Government asserts further that the Supreme Court has made clear that, in the context of this inquiry, the operative date for comparison between the federal and state definitions is the date of the offense conduct, a reading the Government maintains "comports with the policy objectives of the Section 851 enhanced penalties scheme at issue here." *Id.* at 2 (citing *Brown*, 602 U.S. at 111) ("ACCA requires sentencing courts to examine the law *as it was when the defendant violated it*, even if that law is subsequently amended") (Government's emphasis) (citation corrected)). The Government insists "examining the statutory definitions at the time of the criminal conduct—and not when criminal charges were brought or resolved—is the best gauge of the seriousness of the crime, the defendant's mens rea, and the future danger of the defendant they portend." *Id.* (citing *Brown*, 602 U.S. 101).

The Government concludes, "[b]ecause at the time the defendant committed the predicate offense the state and federal definitions of cocaine were the same, Count One of the predicate conviction is a categorical match, and properly triggers enhanced penalties under Section 851." *Id.*

### 2.    Count Three

Second, the Government urges the Court to conclude that Mr. Adams is independently subject to enhanced penalties based on Count Three of the state indictment, arguing "[a]s noted in the parties' Stipulation, there is no dispute that

the operative definitions of oxycodone were the same both federally and in Maine at the time the defendant committed the predicate offense." *Id.* at 3.

Acknowledging that it "did not specifically identify Count Three in its Section 851 Information filed with the Court on December 3, 2024," the Government opines "the Information nevertheless comported with both the requirements of Section 851 and its policy rationale, because it gave the defendant timely, actual notice of the prior conviction to be relied upon in imposing enhanced penalties." *Id.* (citing 21 U.S.C. § 851(a)(1)). The Government insists its omission of Count Three amounts to "clerical error," and it is thus entitled to amend the § 851 information prior to sentencing. *Id.* at 4 (citing 21 U.S.C. § 851(a)(1) ("Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence"); *United States v. Williams*, 584 F.3d 714, 716-17 (7th Cir. 2009) (observing that a § 851 information with various deficiencies, e.g., "the wrong date of the offense sought to be used to enhance the defendant's sentence, or the wrong offense, or the wrong date of the right offense," but which provided the defendant with "actual notice of the intended use of a prior conviction to enhance his sentence" complied with §851 "and that is good enough")). The Government concludes it should be allowed to amend the § 851 information to add Count Three of the state court conviction. *Id.* at 4-5.

### B.  The Defendant's Memorandum Regarding the Application of Enhanced Penalties

The Defendant rejects both arguments asserted by the Government, first arguing that Count One does not qualify as a predicate offense because, at the time Mr. Adams was convicted in state court, the relevant state law was more expansive

than its federal counterpart and, second, that the Government cannot now rely on Count Three when it failed to include that prior conviction in the § 851 information. *Def.'s Mem.* at 1-7.

### 1. Count One

Acknowledging that the state and federal statutory definitions supplied in the parties' stipulation "appear coterminous" as of January 4, 2016, the date of the Defendant's conviction in state court, Mr. Adams emphasizes that, on September 11, 2015, the federal government instituted a rulemaking which removed [123I]ioflupane from Schedule II of the Controlled Substances Act, a regulatory change which the Defendant argues rendered the federal definition and the State definition of cocaine "no longer a categorical match." *Id.* at 3-4 (citing *Brown*, 602 U.S. at 108 (citation corrected)). He argues further that, consistent with the Supreme Court's decision in *Brown*, several federal courts of appeal have determined in such circumstances that a prior conviction for allegedly trafficking in cocaine does not qualify as a serious drug felony as required by § 841, as amended by the First Step Act of 2018. *Id.* at 4 (citing *United States v. Owen*, 51 F.4th 292 (8th Cir. 2022); *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020)).

Comparing *Brown* to the instant case, Mr. Adams argues "the categorical approach requires comparison of the law as of the date of conviction for both legal and practical reasons." *Id.* at 5. He asserts, first, that § 841 is "[t]he relevant law" and "expressly focuses on the date of conviction for the predicate offense and on the conviction being final." *Id.* (citing 21 U.S.C. § 841) ("If any person commits such a

11

violation *after a prior conviction* for a serious drug felony or serious violent felony *has become final*, such person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment . . ..") (Defendant's emphasis) (citation provided). Second, Mr. Adams asserts, "[t]he relevant practical consideration is that the government would not charge a defendant with a serious crime if, after the alleged conduct was complete, and before he was charged or tried, the law was amended to render the conduct lawful." *Id.*

### 2. Count Three

Mr. Adams next contends the Government cannot seek enhanced penalties based on Count Three without having first raised this prior conviction in the § 851 information. *Id.* at 6. He asserts § 851 "expressly allows the government to rely upon more than one prior conviction," and "[t]he government accordingly could have asserted in its 851 Information that it was relying on both the defendant's oxycodone and cocaine convictions." *Id.* Mr. Adams quotes from the relevant statute:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior *convictions*, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous *convictions* to be relied upon.

*Id.* (quoting 21 U.S.C. § 851(a)(1)) (Defendant's emphasis). Here, Mr. Adams argues, the Government relied exclusively on the cocaine charge (Count One), such that it cannot move to amend the § 851 information after Mr. Adams has entered his guilty plea, pursuant to the statute's plain language. *Id.* Thus, the Defendant urges the

Court to reject the Government's attempt to amend the § 851 information at this stage to include the oxycodone conviction.  *Id.*

## IV.  DISCUSSION

The parties' memoranda present two questions: first, whether the Government may seek enhanced penalties under 21 U.S.C. §§ 841(b)(1)(B) and 851 based on Mr. Adams's state-court conviction for trafficking in cocaine, where the parties agree the relevant state and federal law were coterminous at the time Mr. Adams committed the underlying offense on or about May 8, 2015, but the laws were no longer a categorical match when the Defendant pleaded guilty to the predicate offense on January 4, 2016, and, second, whether the Government may rely on Mr. Adams's state-court conviction for trafficking in oxycodone without having first provided the Defendant notice of its intention to do so in the § 851 information.  The Court first addresses the second question, regarding the Government's purported reliance on Count Three.

### A.    Count Three and the § 851 Information

The parties stipulate, and the § 851 information confirms, that the Government only informed Mr. Adams that it intended to rely on his conviction for Unlawful Trafficking in Scheduled Drugs, specifically cocaine, in violation of 17-A M.R.S. § 1105-A(1)(D), in *State v. Kenneth Adams*, Docket Number HOUSC-CR-2015-00066 to seek the imposition of enhanced penalties under 21 U.S.C. §§ 841(b)(1)(B) and 851.  *Stipulation* at 2; *§ 851 Info.* at 1.  The state indictment attached to the stipulation clarifies that Mr. Adams was charged with violating 17-A M.R.S. §1105-

A(1)(D) in Count One, *State Indictment* at 1, and was subsequently convicted on this count on January 4, 2016. *State J.*

The question is whether the Government may now, after the Court has accepted Mr. Adams's guilty plea, amend the § 851 information to include the Defendant's prior state conviction for Count Three, the oxycodone charge. Section 851 provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, <u>unless before trial, or before entry of a plea of guilty</u>, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for that person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1) (emphasis supplied). By its plain language, § 851 requires the Government, when seeking enhanced penalties, to file an information "before trial, or before entry of plea of guilty . . . stating in writing the previous convictions to be relied upon." *Id.* This language is unambiguous and the statute provides only two caveats: (1) "Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts" and (2) "Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." 21 U.S.C. § 851(a)(1).

The Government insists its omission of Count Three in its § 851 information amounts to a "clerical mistake," and, thus, the statute permits it to amend the § 851 information prior to Mr. Adams's sentencing. *Gov't Mem.* at 4. In support of its

14

argument, the Government cites *United States v. Williams*, 584 F.3d 714 (7th Cir. 2009), in which the Seventh Circuit considered an § 851 information with various deficiencies, such as "the wrong date of the offense sought to be used to enhance the defendant's sentence, or the wrong offense, or the wrong date of the right offense," but which still provided the defendant with "actual notice of the intended use of a prior conviction to enhance his sentence." *Gov't's Mem.* at 4-5 (quoting *Williams*, 584 F.3d at 716-17). The *Williams* Court concluded the § 851 information nevertheless complied with 21 U.S.C. § 851 "and that is good enough." *Id.* (quoting *Williams*, 584 F.3d at 716-17).

While the Court takes the Government's point that it did provide Mr. Adams with "actual notice of the intended use of *a* prior conviction," *Williams*, 584 F.3d at 716-17 (emphasis supplied), to wit, Count One, the Government's failure to refer to Count Three strikes the Court as a material omission, rising above what the *Williams* Court found to be "[c]lerical mistakes," because the Government expressly informed Mr. Adams it would seek enhanced penalties based on Count One alone, but now seeks to amend the § 851 information to add Count Three alongside Count One; this is not simply "the wrong date of the offense sought to be used," or "the wrong date of the right offense," or even "the wrong offense," but the addition of a new conviction entirely. *Williams*, 584 F.3d at 716-17.

Although counsel did not cite any First Circuit authority and the Court could find none, other circuit courts have emphasized that "[t]he purpose of the § 851 information is to provide notice to a defendant prior to trial that he faces an increased

punishment if convicted of a qualifying offense, such that the defendant has the opportunity to contest the accuracy of the [§ 851] information and to allow the defense sufficient time to understand the full consequences of a guilty plea or verdict." *United States v. Lincoln*, 165 Fed. Appx. 275, 277 (4th Cir. 2006) (per curiam). Furthermore, "[i]n determining whether a § 851 information passes constitutional muster, *we ask 'whether [it] . . . provided [the defendant] reasonable notice of the government intent to rely on a particular conviction and a meaningful opportunity to be heard.'" *United States v. Kendrick*, 825 Fed. Appx. 77, 78 (3d Cir. 2020) (emphasis supplied). The *Kendrick* Court went on to say that it is only when "that standard is satisfied" that "any errors in the information are considered '[c]lerical mistakes,'" adding "[w]e have said that this applies to 'inaccurate descriptions of prior convictions.'" *Id.* at 79 (quoting *United States v. Rivas*, 493 F.3d 131, 142 (3d Cir. 2007)); *id.* (finding "[c]lerical mistakes" in a § 851 information which "erroneously add[ed] an 'e'" to the name of the felony court of conviction, misreporting it as "Allegheny County Court of Common Please," and "listed the statute of conviction as 18 Pa. Cons. Stat. § 13(a)(16), which does not exist, rather than 35 Pa. Stat. § 780-113(a)(30)"). The Fifth Circuit has similarly not allowed the "clerical mistakes" exception to swallow the rule. *See United States v. Steen*, 55 F.3d 1022, 1026 (5th Cir. 1995) (explaining that the purpose of a § 851 information "is to provide defendants with the notice necessary to allow them to challenge the contents of the indictment or information" and concluding, based on this principle, that § 851 information which incorrectly described the defendant's prior conviction as one for delivery of cocaine rather than

possession of cocaine was not fatal because the defendant challenged the admissibility of the prior conviction in its proper format through a pretrial motion, thus demonstrating he was aware of the prior conviction the Government intended to rely on and was not prejudiced by the Government's clerical mistake).

Applying these precedents to the instant case, the Court concludes the Government may not now amend the § 851 information to add Count Three after Mr. Adams has entered his guilty plea, for the simple reason that the Government did not "provide[] [Mr. Adams] reasonable notice of the government intent to rely on [this] particular conviction." *Kendrick*, 825 Fed. Appx. at 78. Because the Government did not notify Mr. Adams that it intended to rely on Count Three to seek enhanced penalties, the Defendant did not "ha[ve] the opportunity to contest the accuracy of the [§ 851] information" and the Government did not "allow the defense sufficient time to understand the full consequences of a guilty plea or verdict." *Lincoln*, 165 Fed. Appx. at 277. The Court additionally concludes the omission of Count Three is not a "[c]lerical mistake[]"; the statute's second caveat, permitting the Government to seek an extension prior to the Defendant's entry of a plea of guilty, is also inapplicable and the Government does not contend otherwise.

In sum, the Court resolves this issue in favor of the Defendant and concludes the Government may not seek enhancement of penalties based on a prior conviction, here, Count Three in Docket Number HOUSC-CR-2015-00066, not included in the § 851 information filed on December 3, 2024. *See § 851 Info.*[3]

---

[3]    The Court reaches this issue because if it is incorrect in its conclusion about the applicability of Count One, Count Three will not be available to provide the § 841predicate in place of Count One.

17

**B.      Count One as a Predicate Offense under the ACCA**

As an initial matter, "[a] state drug offense counts as an ACCA predicate only if the State's definition of the drug in question 'matche[s]' the definition under federal law." *Brown*, 602 U.S. at 106 (quoting *Shular v. United States*, 589 U.S. 154, 158 (2020)).  While the parties agree that *Brown v. United States*, 602 U.S. 101, governs this issue, *see Gov't's Mem.* at 2; *Def.'s Mem.* at 2, 4, they dispute whether the operative date for determining if the enhancement applies is May 8, 2015, the date on which Mr. Adams committed the predicate offense, or January 4, 2016, the date on which Mr. Adams was convicted of the predicate offense.  Pursuant to *Brown*, the Government urges the Court to apply the categorical approach to the statutes applicable on the date of the underlying conduct, *Gov't's Mem.* at 1-2, while the Defendant counters that the Supreme Court in *Brown* instructed courts to consider whether there was a categorical match between state and federal law on the date of a defendant's state court sentencing.  *Def.'s Mem.* at 5.

By the Court's read, *Brown* instructs a sentencing court to consider whether there was a categorical match between the state and federal crimes at the time the Defendant committed the state crime:

> The ACCA is a recidivist statute that gauges what a defendant's "history of criminal activity" says about his or her "culpability and dangerousness." *McNeill v. United States*, 563 U.S. 816, 823 (2011).  It does this through a "backward-looking" examination, *id.* at 820, of "previous convictions" that bear on dangerousness, § 924(e)(1).  Thus, as we explained in *McNeill*, <u>ACCA requires sentencing courts to examine the law as it was when the defendant violated it</u>, even if that law is subsequently amended.  *Id.* at 820-22 (listing cases examining the law at the time of the predicate offense).

18

*Brown*, 602 U.S. at 111 (emphasis supplied).  The *Brown* Court continued to clarify that "[a] defendant's 'history of criminal activity' does not 'cease to exist' merely because the crime was later redefined.  It therefore makes sense to ask . . . whether a prior offense met ACCA's definition of seriousness—and thus suggested future danger—at the time it was committed."  *Id.* at 113-14 (quoting *McNeill*, 563 U.S. at 823); *accord id.* at 118 ("Section 924(e)(2)(A)(ii) currently means that a prior state drug conviction may constitute an ACCA predicate if the drugs on the federal and state schedules matched when the state drug offense was committed") (internal citation omitted) (emphasis supplied); *id.* at 123 ("For these reasons, we hold that a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that [state] offense.  Accordingly, we affirm. . ..").

Three Justices, Jackson, Kagan and Gorsuch, disagreed.  Justice Jackson, dissenting in *Brown*, contended that "courts should apply the drug schedules in effect at the time of the federal firearms offense that triggers ACCA's potential application." *Id.* at 123 (Jackson, J., dissenting).  But Justice Jackson wrote in dissent and under the majority rule from *Brown*, the date of the predicate crime, not the date of sentencing, is operative.  *Id.* at 111, 113-14, 118, 123.

Although counsel did not cite and the Court could not find any First Circuit caselaw on point, other federal courts of appeal resolving similar issues have, consistent with the majority opinion in *Brown*, considered whether there was a categorical match between state and federal law on the day a defendant committed the predicate offense, not the date a defendant was sentenced.  *See United States v.*

*Minor*, 121 F.4th 1085, 1092 (5th Cir. 2024) ("The [*Brown*] Court held that 'a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules *at the time of that offense*'") (citing *Brown*, 602 U.S. at 102) (emphasis added by *Minor* Court); *United States v. Wilkes*, 2025 U.S. App. LEXIS 7568, at *8 (6th Cir. Apr. 1, 2025) ("[The defendant] urges us to conclude that 'if the federal authorities narrow the definition of a drug at any point before sentencing, the prior convictions no longer count as ACCA predicates.' But the Supreme Court explicitly rejected this argument and adopted a time-of-offense rule instead") (citing *Brown*, 602 U.S. at 123); *Hall v. Warden, FCI Williamsburg*, No. 8:21-cv-3497-RMG-BM, 2024 U.S. Dist. LEXIS 207192, at *17-18 (D. S.C. Aug. 14, 2024) (citing *Brown* as "holding that a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that offense") (citing *Brown*, 602 U.S. 101) (citation amended).

Mr. Adams alternatively argues that *Brown* is distinguishable because it addressed an enhanced penalty under the ACCA, 18 U.S.C. § 924(e)(1), while his own case concerns the penalty provision of 21 U.S.C. § 841. *Def.'s Mem.* at 5. 18 U.S.C. § 924(e)(1) provides:

> In the case of a person who violates section 922(g) of this title [18 U.S.C. § 922(g)] and has three previous convictions by any court referred to in section 922(g)(1) of this title [18 U.S.C. § 922(g)(1)] for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g) [18 U.S.C. § 922(g)].

18 U.S.C. § 924(e)(1).  Mr. Adams compares § 924(e)(1) to 21 U.S.C. § 841(b)(1):

> If any person commits such a violation after a prior conviction for a **serious drug felony** or **serious violent felony** has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment. . ..

21 U.S.C. § 841(b)(1)(B); *see also Def.'s Mem.* at 5 (quoting 21 U.S.C. § 841(b)(1)(A))

(Defendant's emphasis).[4]

As an initial matter, Mr. Adams is correct that the *Brown* Court discussed a different penalty enhancement than the one at issue here.  However, the relevant language of the two penalty provisions is notably similar.  Both statutes contemplate penalty enhancements for, similarly, "a serious drug offense," 18 U.S.C. § 924(e)(1), and "a serious drug felony," 21 U.S.C. § 841(b)(1)(B).  In addition, both use the terminology of "conviction," *compare* 18 U.S.C. § 924(e)(1) ("three previous convictions") *with* 21 U.S.C. § 841(b)(1)(B) ("a prior conviction"), and both refer to the commission of a crime.  *Compare* 18 U.S.C. § 924(e)(1) (". . . committed on occasions different from one another. . ..") *with* 21 U.S.C. § 841(b)(1)(B) ("If any person commits . . ..").

---

[4]     Mr. Adams quotes from 21 U.S.C. § 841(b)(1)(A), which similarly provides, in relevant part: "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment . . .."  *Def.'s Mem.* at 5 (quoting 21 U.S.C. § 841(b)(1)(A) (Defendant's emphasis removed).  However, the Government seeks to hold Mr. Adams accountable for "40 grams or more of a mixture or substance containing N-phenyl-N-[ 1-( 2-phenylethyl) -4-piperidinyl ] propenamide," which the Government argues is "in violation of Title 21, United States Code, Section 841(a)(1)" and subject to the penalty provisions of 21 U.S.C § 841(b)(1)(B).  *Indictment* at 1.  The penalty provision of 21 U.S.C § 841(b)(1)(A) applies to "400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[ 1-(2-phenylethyl) -4-piperidinyl ] propenamide," and is thus inapplicable to Mr. Adams's case.  21 U.S.C § 841(b)(1)(A)(vi).

Furthermore, the Defendant cites no authority for his view that the statutory language in § 841(b)(1)(B) distinguishes it from § 924(e)(1) for purposes of the Supreme Court's application of the categorical approach in *Brown*.  This Court, upon review of the caselaw, comes to the opposite conclusion.  *See United States v. Lindsey*, No. 23-11671, 2024 U.S. App. LEXIS 17923, at *3 (11th Cir. July 22, 2024) (concluding "because Florida's definition of cocaine matched the federal definition in 2003 and 2009 when [the defendant] committed his prior state offenses, both qualify as serious drug offenses under the ACCA," and additionally determining that because "the definition of 'serious drug felony' under 21 U.S.C. § 841(b)(1)(A) incorporates the definition of 'serious drug offense' under ACCA . . . .. our conclusion that the 2009 conviction qualifies as a 'serious drug offense' under ACCA mandates the conclusion that it also qualifies as a 'serious drug felony' under 21 U.S.C. § 841(b)(1)(A)") (citing *Brown*, 602 U.S. at 111) (citation amended); *accord United States v. Unseth*, 2025 U.S. Dist. LEXIS 75638, at *4-7 (N.D. Fla. Mar. 13, 2025) (rejecting a defendant's argument that he was not subject to enhanced penalties under 21 U.S.C. § 841(b) and holding "[w]hen comparing drug definitions to determine whether a state offense is a valid predicate for a federal sentencing enhancement, a court must look to the definitions that were in place at the time the state offense was committed, not at the time of the federal sentencing") (citing *Brown*, 602 U.S. at 123); *but see United States v. Brown*, No. 22-10485, 2025 U.S. App. LEXIS 7981, at *5 (11th Cir. Apr. 4, 2025) (applying *Brown*, 602 U.S. 101, to 21 U.S.C. § 841(b)(1)(C) and holding "a court must look to whether, at the time of the previous conviction, the offense would have served

as a predicate") (citing *Brown*, 602 U.S. at 111-15). The Court joins these other courts in extending the Supreme Court's holding in *Brown* to 21 U.S.C. § 841(b).

Having concluded *Brown* applies to the instant case, the Court additionally determines the majority opinion in *Brown* controls under the doctrine of stare decisis and directs the Court to apply the categorical approach on the date Mr. Adams committed the predicate offense, May 8, 2015, not the date he was sentenced, January 4, 2016. *See Brown*, 602 U.S. at 123. The *Brown* Court is clear that "[a] state drug offense counts as an ACCA predicate only if the State's definition of the drug in question 'matche[s]' the definition under federal law." *Brown*, 602 U.S. at 106 (quoting *Shular*, 589 U.S. at 158). Here, "examin[ing] the law as it was when the defendant violated it," the parties agree the relevant state and federal laws in place on May 8, 2015 were a categorical match and, thus, the Court concludes Count One triggers the enhanced penalty pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 851. *Id.* at 111 (citing *McNeill*, 563 U.S. at 823); *Stipulation* at 1-4; *Def.'s Suppl. Stipulation* at 1-2; *accord Gov't's Suppl. Stipulation* at 1.

## V.    CONCLUSION

The Court CONCLUDES Count One of *State v. Kenneth Adams*, Docket Number: HOUSC-CR-2015-00066 is a categorical match and properly triggers enhanced penalties under 21 U.S.C. §§ 841(b)(1)(B) and 851, but that the Government may not seek enhanced penalties based on Count Three because it was not included in the Information Charging Prior Conviction (21 U.S.C. § 851) (ECF No. 40).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of May, 2025